JOHN W. SINGLETON, a/k/a JOHN WESTLY, a/k/a JOHN SINKLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Singleton v. Commissioner
Docket No. 9680-74.
United States Tax Court
T.C. Memo 1978-255; 1978 Tax Ct. Memo LEXIS 258; 37 T.C.M. (CCH) 1106; T.C.M. (RIA) 78255; July 11, 1978, Filed Laurence Goldfein,Ira Tilzer and Richard Levine, for the petitioner. Michael K. Phalin, for the respondent. GOFFE
MEMORANDUM OPINION GOFFE, Judge: This matter is before us because of the parties' disagreement of computations pursuant to Rule 155, Tax Court Rules of Practice and Procedure. A brief history of the instant case will, from a chronological point of view, place the issues now before us in proper focus. After this case was set for trial on the merits and after an evidentiary hearing was scheduled on whether petitioner's constitutional rights guaranteed under the Fourth and Fifth Amendments of the U.S. Constitution were violated, petitioner was indicted for income tax evasion for one of the four taxable years pending before us. Subsequent to petitioner's indictment, *259 an evidentiary hearing was held, the findings of fact and opinion of which are set forth in Singleton v. Commissioner,65 T.C. 1123 (1976), which was filed March 18, 1976. Respondent moved for a protective order under Rule 103(a)(1)(2) and (4) to suspend all further proceedings pending the final disposition of the criminal indictment. We denied respondent's motion. In addition, we held that the Commissioner's determination in his statutory notice of deficiency was not based upon constitutionally tainted evidence. We further held that the manner in which the special agents of the Commissioner conducted the initial interview of petitioner did not violate his rights guaranteed under the Fifth and Sixth Amendments to the U.S. Constitution. A trial on the merits followed the evidentiary hearing wherein we decided that: (1) petitioner understated his taxable income for the years 1969, 1970, 1971 and 1972 in the respective amounts of $ 36,067.05, $ 18,565.60, $ 12,798.02 and $ 49,105.15; and (2) at least a part of the underpayment of income tax in each of the taxable years 1969, 1970, 1971 and 1972 was due to fraud on the part of petitioner. Our findings of fact and *260 opinion on the merits was filed April 5, 1977 in Singleton v. Commissioner,T.C. Memo 1977-98 and a decision is to be entered under Rule 155. Following our opinion on the merits, respondent submitted his Rule 155 computation to which petitioner objects. The issues for our decision in the instant matter are: (1) whether respondent is entitled to credit money, seized pursuant to a jeopardy assessment, to interest which was not included in the jeopardy assessment, rather than to the unpaid assessed liabilities for tax and penalty which were assessed as a jeopardy assessment; and (2) whether respondent's computation credits petitioner's accounts with payments on the incorrect dates and thereby increases petitioner's liability for interest. All of the facts relevant to the issues in the instant matter have been stipulated in a supplemental stipulation of facts. The supplemental stipulation of facts and attached exhibits are incorporated herein by this reference. Respondent assessed the following deficiencies in tax and fraud penalties against petitioner on August 9, 1974, pursuant to section 6861, Internal Revenue Code of 1954 (jeopardy *261 assessment): [1]
Additions to Tax Taxable
Sec. 6653(b), Year
Deficiency
I.R.C. 1954
Total
1969
$ 20,554.10
$ 10,277.05
$ 30,831.15
1970
11,478.44
5,739.22
17,217.66
1971
6,624.07
3,312.04
9,936.11
1972
56,999.56
28,499.78
85,499.34
Totals
$ 95,656.17
$ 47,828.09
$ 143,484.26
Respondent then served on petitioner on August 12, 1974, a notice and demand for the above amounts by leaving a written notice and demand at petitioner's residence located at Englewood, New Jersey. At the same time respondent levied upon petitioner's bank accounts as follows: Bank Name and Location
Amount of Levy
Citizens National Bank
Englewood, New Jersey
$ 21,996.88
Carver Federal S & L
New York, New York
22,565.66
Northern Valley Englewood S & L
Englewood, New Jersey
21,457.32
Bowery Savings Bank
New York, New York
22,217.66
Bronx Savings Bank
Bronx, New York
22,698.94
TOTAL
$ 110,936.46
On the following day, August 13, 1974, respondent levied upon petitioner's bank account at South Carolina National Bank, St. Matthews, South Carolina, *262 in the amount of $ 5,142.35, making the entire amount levied upon pursuant to the jeopardy assessment $ 116,078.81. Mr. Victor Godfrey was the revenue officer assigned by respondent to collect the amounts assessed, as described above, against petitioner. Pursuant to respondent's levies Mr. Godfrey received a check from Midatlantic National Bank/Citizens, formerly known as Citizens National Bank. The check was dated August 12, 1974, and in the amount of $ 21,996.88. Following receipt of this check, Mr. Godfrey allocated these funds to petitioner's accounts as of August 12, 1974, as follows: Amount
Taxable Allocated
Year
$ 17,217.66
1970
4,761.22
1971
$ 21,978.88 *
On August 16, 1974, Mr. Godfrey received a check dated August 14, 1974, from Northern ValleyEnglewood S & L in the amount of $ 21,457.32. He allocated these funds to petitioner's accounts as of August 16, 1974, as follows: Amount Allocated
Taxable Year
$ 5,174.89
1971
16,282.43
1969
$ 21,457.32
On August 21, 1974, Mr. Godfrey received a check dated August 19, 1974, from Eastern Savings *263 Bank, formerly known as Bronx Savings Bank, in the amount of $ 22,698.94. He allocated these funds to petitioner's account as of August 21, 1974, in the following manner: Amount Allocated
Taxable Year
$ 19,921.68
1969
2,295.59
1970
481.67
1971
$ 22,698.94
On August 28, 1974, Mr. Godfrey received a check dated August 27, 1974, from Carver Federal S & L in the amount of $ 22,565.66. He allocated these funds to petitioner's accounts as of August 28, 1974, in the following manner: Amount Allocated
Taxable Year
$ 447.97
1971
22,117.69
1972
$ 22,565.66
On August 29, 1974, Mr. Godfrey received two checks both dated August 12, 1974, from South Carolina National Bank in the respective amounts of $ 3,199.25 and $ 1,943.10. He allocated these funds to petitioner's account, as of August 29, 1974, for petitioner's taxable year of 1972. Mr. Godfrey received these two checks from Mr. Sam Johnson who was a revenue officer of respondent at Orangeburg, South Carolina. Mr. Johnson had received these checks from the bank on August 13, 1974. On August 27, 1974, respondent received a check dated August 26, 1974, from Bowery Savings Bank in *264 the amount of $ 22,217.66. These funds were credited to the taxable year 1972 as of August 27, 1974. The following schedule summarizes respondent's allocation of the $ 116,078.81 collected during August 1974 pursuant to the jeopardy assessment. Taxable
Amount
Amount Assessed by
Excess Amount Year
Credited
Jeopardy Assessment
Credited
1969
$ 36,204.11
$ 30,831.15
$ 5,372.96
1970
19,513.25
17,217.66
2,295.59
1971
10,865.75
9,936.11
929.64
1972
49,477.70
85,499.34
0
Total
$ 116,078.81 *
$ 143,484.26
$ 8,598.19
During the same time, August 1974, Mr. Godfrey calculated the accrued interest on the liabilities jeopardy assessed on August 9, 1974, for the taxable years 1969 through 1971. He allocated the money which was collected by levy to the taxable years 1969 through 1971 in amounts sufficient to cover the total amount assessed pursuant to the jeopardy assessment plus the accrued interest he calculated, thereby reducing the Excess Amount Credited as shown in the above *265 table. This resulted in petitioner's accounts for the taxable years 1969, 1970 and 1971 being credited for accrued interest in the respective amounts of $ 5,324.23, $ 2,287.16 and $ 920.03. The actual assessment of the above amounts of accrued interest took place on June 16, 1975, by way of a "computer generated assessment" evidenced by an assessment certificate (Form 23 C). On November 29, 1976, respondent partially abated the jeopardy assessment against petitioner for the taxable year 1972. The prior jeopardy assessment in the amount of $ 56,999.56 (deficiency in tax) and $ 28,499.78 (section 6653(b) penalty) was abated to $ 24,499.56 and $ 12,249.78 respectively. The $ 49,477.70 previously credited to petitioner's account was reallocated as follows: Amount of Reallocation
Amount Applied to:
$ 24,299.56
Abated deficiency
12,249.78
Additions under sec. 6653(b)
2,048.63
Accrued interest
10,679.73
Refund to petitioner
$ 49,277.70 *
In addition, on November 29, 1976, respondent *266 assessed accrued interest ($ 2,048.63) with respect to the taxable year 1972. Respondent did not notify petitioner that any of the funds ($ 116,078.81) collected during August 1974 had been applied to accrued interest rather than to liabilities assessed pursuant to the jeopardy assessment. On December 23, 1976, respondent met with counsel for petitioner and informed counsel that a portion of the $ 116,078.81 collected had been applied to accrued interest. Prior to this meeting petitioner had given no instructions to respondent as to the manner of disposition of the $ 116,078.81 collected during August 1974. Petitioner contends that respondent was totally without authority to allocate any of the amounts seized to cover unassessed accrued interest for the taxable years 1969 through 1971 when there was an unpaid balance due for assessed taxes and penalties for the taxable year 1972. In addition, petitioner takes the position that he is entitled to have his accounts for the taxable years in issue credited with payments as of the respective dates that notices of levy were served rather than as of the date respondent received such payments, thereby stopping the accrual of interest. *267 The threshold question for our consideration is whether we have jurisdiction of the matter before us. While neither respondent nor petitioner specifically raised the question of jurisdiction on brief, respondent did raise the question at the hearing and it is incumbent upon us to consider this point. Newsom v. Commissioner,22 T.C. 225 (1954), affd. per curiam on other grounds 219 F.2d 444 (5th Cir. 1955). The general rule is that we do not have jurisdiction over matters concerning interest. Hudgins v. Commissioner,55 T.C. 534 (1970); Estate of Shedd v. Commissioner,37 T.C. 394 (1961), affd. 320 F.2d 638 (9th Cir. 1963); Chapman v. Commissioner,14 T.C. 943 (1950), affd. per curiam 191 F.2d 816 (9th Cir. 1951); Commissioner v. Estate of Kilpatrick,140 F.2d 887 (6th Cir. 1944), affg. a Memorandum Opinion of this Court. However, with respect to matters concerning a jeopardy assessment an exception to this rule is set forth in section 6861(c) which in part provides: the Tax Court shall have jurisdiction to redetermine the entire amount of the deficiency *268 and of all amounts assessed atthesametime in connection [with a jeopardy assement]. * * * [Emphasis added.] Even though section 6861(c) gives this Court jurisdiction over matters concerning interesty its scope is limited. We have jurisdiction to determine the amount of interest only when it is assessed pursuant to a jeopardy assessment. Riss & Co. v. Commissioner,45 T.C. 230 (1965). The facts in the instant case demonstrate that petitioner does not come within the exception provided in section 6861(c). The matters relating to the accrued interest on the assessed deficiencies for the taxable years 1969, 1970 and 1971 were not assessed under a jeopardy assessment. The jeopardy assessment included only assessments of tax and fraud penalties. Accordingly, we do not have jurisdiction over matters which concern interest in the instant case. Papa v. Commissioner,55 T.C. 1140 (1971), disposing of a supplemental issue in Papa v. Commissioner,T.C. Memo 1970-90, revd. on other issues 464 F.2d 150 (2d Cir. 1972). We would like to point out that the substantive matters presented in the instant case *269 should have been resolved by the parties administratively, and while we are sympathetic with petitioner's plight we are compelled to uphold respondent's computation which relates to our determination in Singleton v. Commissioner,T.C. Memo 1977-98. Due to our holding on the question of jurisdiction, we cannot address ourselves to the other issues presented. Decision will be entered in accordance with the computation submitted by respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
*. In addition Mr. Godfrey allocated the balance ( $ 18) to lien fees.↩
*. This figure includes the lien fee in the amount of $ 18 which Mr. Godfrey applied pursuant to his allocation of funds to various taxable years of petitioner.↩
*. The total figure reflected in the supplemental stipulation of facts indicates an amount of $ 49,477.70. We are unable to determine from the record this $ 200 discrepancy.↩